Case 3:06-cr-01021-BTM Document 1 Filed 05/11/06 PageID.1 Page 1 of 12

USDC SCAN INDEX SHEET










SUI  5/12/06 10:12
3:06-CR-01021   USA V. CAMPBELL
*1*
*CRINDI.*



~~SECRET~~ unsealed 5/12/06 RJB

FILED 2006 MAY 11 PH 2:16
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

June 2005 Grand Jury  '06 CR 1021 BTM

| UNITED STATES OF AMERICA, | ) Criminal Case No. _____ |
|---|---|
| Plaintiff, | ) |
|  | ) I N D I C T M E N T |
| v. | ) |
|  | ) Title 18, U.S.C., Sec. 371 - |
| CAMERON CAMPBELL (1), | ) Conspiracy; Title 18, U.S.C., |
| JOSEPH WAYNE McCOOL (2), | ) Sec. 1343 - Wire Fraud |
| DONALD MANNING (3), | ) |
|  | ) |
| Defendants. | ) |

The Grand Jury charges:

Count 1

CONSPIRACY

**OBJECT OF THE CONSPIRACY**

1. Beginning at a date unknown to the grand jury and continuing up to and including February 25, 2004, within the Southern District of California, and elsewhere, defendants CAMERON CAMPBELL, JOSEPH WAYNE McCOOL, and DONALD MANNING knowingly conspired and agreed with each other, and with other persons known and unknown to the Grand Jury, to commit wire fraud by devising, intending to devise, and carrying out a material scheme to defraud and to obtain money from

WPC:nlv:San Diego
5/11/06

members of the public by means of materially false and fraudulent pretenses and representations, and omissions of material fact, and for the purpose of executing this material fraudulent scheme, to knowingly transmit, and cause to be transmitted, by means of wire communications in interstate commerce, writings, signs, signals and sounds; in violation of Title 18, United States Code, Section 1343.

**METHODS AND MEANS OF THE CONSPIRACY**

2.   It was a method and means of the conspiracy that defendants CAMERON CAMPBELL, JOSEPH WAYNE McCOOL, and DONALD MANNING operated, and were agents of, The Brixon Group Ltd. (hereinafter "BRIXON"), an entity purportedly engaged in placing its clients' funds in lucrative investment programs.  Defendant CAMERON CAMPBELL also was BRIXON's attorney.

3.   It was a further method and means of the conspiracy that defendants CAMERON CAMPBELL, JOSEPH WAYNE McCOOL, and DONALD MANNING, and others, solicited members of the general public to invest retirement accounts, and other funds, in BRIXON.

4.   It was a further method and means of the conspiracy that defendants CAMERON CAMPBELL, JOSEPH WAYNE McCOOL, and DONALD MANNING induced persons to invest money in BRIXON by making, and causing others to make, the following materially false, fraudulent, and misleading representations, among others:

   a.   that BRIXON would use the investors' funds to participate in European investment programs;

   b.   that BRIXON would use the investors' funds as reserves for high-yield insurance company portfolio investments;

   c.   that BRIXON's investment activities had generated, and would generate, returns of 10 percent per month;

2

   d.  that the State Bar of California insured the investors' principal;

   e.  that the most BRIXON investors could lose would be the amount of the returns earned on their principal investment; and

   f.  that defendant JOSEPH WAYNE McCOOL was a banking expert who, prior to working with BRIXON, had successfully managed a large private trust in Europe.

5.  It was a further method and means of the conspiracy that defendants CAMERON CAMPBELL, JOSEPH WAYNE McCOOL, and DONALD MANNING would intentionally conceal from, and fail to disclose to, investors the following material facts, among others:

   a.  that most funds received from BRIXON investors would not be, and were not, placed into any investments for the investors' benefit;

   b.  that new funds received from BRIXON investors had been, and would be, used to make payments to earlier investors;

   c.  that the investors' principal would not be, and was not, validly and continuously insured against all loss;

   d.  that the State Bar of California did not guarantee or insure any BRIXON investment program or the investors' principal;

   e.  that in 1997, defendant JOSEPH WAYNE McCOOL was convicted in federal court of conspiracy to commit wire fraud and conspiracy to traffic in counterfeit goods;

   f.  that, just prior to operating BRIXON, defendant JOSEPH WAYNE McCOOL served over two years in federal prison on his convictions for conspiracy to commit wire fraud and conspiracy to traffic in counterfeit goods; and

//

3

   g. that a substantial portion of funds received from BRIXON investors had been, and would be, converted to the personal use and benefit of defendants CAMERON CAMPBELL, JOSEPH WAYNE McCOOL, and DONALD MANNING.

  6. It was a further method and means of the conspiracy that defendants CAMERON CAMPBELL, JOSEPH WAYNE McCOOL, and DONALD MANNING would induce investors to sign Capital Private Placement Agreements with BRIXON.

  7. It was a further method and means of the conspiracy that defendants CAMERON CAMPBELL, JOSEPH WAYNE McCOOL, and DONALD MANNING would induce investors to sign powers of attorney appointing defendant CAMERON CAMPBELL as the investors' attorney-in-fact for the ostensible purpose of allowing defendant CAMERON CAMPBELL to place the investors' funds into investments for the investors' benefit.

  8. It was a further method and means of the conspiracy that defendants CAMERON CAMPBELL, JOSEPH WAYNE McCOOL, and DONALD MANNING would induce, and cause others to induce, investors to wire transfer funds to defendant CAMERON CAMPBELL's attorney-client trust accounts at Northern Trust Bank and First National Bank.

  9. It was a further method and means of the conspiracy that defendants CAMERON CAMPBELL, JOSEPH WAYNE McCOOL, and DONALD MANNING would induce, and cause others to induce, investors to rollover their retirement accounts to BRIXON by transferring the retirement accounts to Resources Trust Company, a company that provided custodial and record-keeping services for self-directed retirement plans.

//
//
//

10. It was a further method and means of the conspiracy that defendants CAMERON CAMPBELL, JOSEPH WAYNE McCOOL, and DONALD MANNING would cause funds received from BRIXON investors to be transferred to other BRIXON investors as ostensible periodic returns on investments.

11. It was a further method and means of the conspiracy that defendants CAMERON CAMPBELL, JOSEPH WAYNE McCOOL, and DONALD MANNING would convert to their own personal use and benefit hundreds of thousands of dollars received from BRIXON investors.

12. It was a further method and means of the conspiracy that, when BRIXON failed to make promised payments to investors, defendants CAMERON CAMPBELL and JOSEPH WAYNE McCOOL would falsely advise investors that the investors' funds were tied up in Europe due to the United States Patriot Act and a variety of international banking problems.

13. Through the foregoing, and other, methods and means, and on the basis of the foregoing, and other, misrepresentations and omissions of material facts, BRIXON fraudulently obtained over $10 million from members of the general public.

**OVERT ACTS**

14. In furtherance of said conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed within the Southern District of California, and elsewhere:

    a. In or around April 2000, defendant JOSEPH WAYNE McCOOL represented to Katharine Bowers, a prospective investor, that money invested with BRIXON would be lent to war-torn European countries for the purpose of buying refrigerators.

//

5

1  b. In or around April 2000, defendant JOSEPH WAYNE McCOOL told Katharine Bowers, a prospective investor, that the return on money invested with BRIXON was 10 percent per month.

c. In or around April 2000, defendant CAMERON CAMPBELL told Katharine Bowers, a prospective investor, that principal invested with BRIXON was bond insured and was not at any risk.

d. On or about March 8, 2001, defendants DONALD MANNING and JOSEPH WAYNE McCOOL presented James Peterson with a Limited Power of Attorney form and Placement Instructions for an investment with BRIXON.

e. On or about March 8, 2001, defendants DONALD MANNING and JOSEPH WAYNE McCOOL represented to James Peterson that BRIXON's investment program would generate returns of 15 percent per month, but that 5 percent per month would be used to purchase insurance for James Peterson's principal investment.

f. On or about March 20, 2001, defendant CAMERON CAMPBELL assured James Peterson that, within two to three weeks, Mr. Peterson would receive a copy of the insurance policy protecting his principal investment.

g. In or around March 2001, defendant CAMERON CAMPBELL told Gerard Schevers, a prospective investor, that principal invested with BRIXON would be guaranteed through the State Bar of California.

//
//

6

    h.    On or about May 30, 2001, defendant CAMERON CAMPBELL wire transferred $11,000 from the Campbell client trust account at Northern Trust Bank to defendant JOSEPH WAYNE McCOOL'S account at Desert Schools Federal Credit Union.

    i.    On or about May 30, 2001, defendant CAMERON CAMPBELL wire transferred $10,575 from the Campbell client trust account at Northern Trust Bank to defendant DONALD MANNING's account at Bank of America.

    j.    On or about June 2, 2001, defendant CAMERON CAMPBELL wrote himself a $22,000 check drawn on the Campbell client trust account at Northern Trust Bank.

    k.    On or about June 18, 2001, defendant CAMERON CAMPBELL wire transferred $5,000 from the Campbell client trust account at Northern Trust Bank to Merrill Lynch for credit to Gerard Schevers' account.

    l.    On or about June 18, 2001, defendant CAMERON CAMPBELL wrote himself a $9,500 check drawn on the Campbell client trust account at Northern Trust Bank.

    m.    On or about June 29, 2001, defendant CAMERON CAMPBELL wire transferred $10,575 from the Campbell client trust account at Northern Trust Bank to defendant DONALD MANNING's account at Bank of America.

    n.    On or about June 29, 2001, defendant CAMERON CAMPBELL wire transferred $9,500 from the Campbell client trust account at Northern Trust Bank to defendant JOSEPH WAYNE McCOOL's account at Wells Fargo Bank.

//

o. On or about June 29, 2001, defendant CAMERON CAMPBELL wire transferred $11,000 from the Campbell client trust account at Northern Trust Bank to defendant JOSEPH WAYNE McCOOL'S account at Desert Schools Federal Credit Union.

p. On or about July 13, 2001, defendant CAMERON CAMPBELL wire transferred $5,000 from the Campbell client trust account at Northern Trust Bank to Gerard Schevers' account at Merrill Lynch.

q. In or around December 2001, defendant CAMERON CAMPBELL told Gerard Schevers that, if Mr. Schevers rolled over a retirement account to BRIXON, then Mr. Schevers would receive a return of 5 percent per month, and that BRIXON would use additional investment proceeds to pay for an insurance policy protecting Mr. Schevers' principal investment.

r. On or about June 13, 2002, defendant CAMERON CAMPBELL wire transferred $5,000 from the Campbell attorney-client trust account at First National Bank to defendant JOSEPH WAYNE McCOOL's account at Desert Schools Federal Credit Union.

s. On or about December 5, 2003, defendant CAMERON CAMPBELL sent via e-mail a message to BRIXON investors representing that "the Frankfurt group" partially funded a loan with a deposit to defendant CAMERON CAMPBELL's account that day, and that "as soon as the funds are verified and approved I will distribute the funds."

1  t.  On or about December 22, 2003, defendant CAMERON CAMPBELL sent via e-mail a message to BRIXON investors stating, "Joe says the first batch of insurance guarantees came into escrow today."

All in violation of Title 18, United States Code, Section 371.

## Counts 2-12

### WIRE FRAUD

1.  Beginning at a date unknown to the grand jury and continuing up to and including February 25, 2004, within the Southern District of California, and elsewhere, defendants CAMERON CAMPBELL, JOSEPH WAYNE McCOOL, and DONALD MANNING did devise and intend to devise a material scheme to defraud and to obtain money by materially false and fraudulent pretenses, representations, and promises, as described in paragraphs 2 through 14 of Count 1.

2.  On or about the dates set forth below, within the Southern District of California, and elsewhere, defendants CAMERON CAMPBELL, JOSEPH WAYNE McCOOL, and DONALD MANNING, for the purpose of executing the above-described material scheme to defraud and to obtain money and property by materially false and fraudulent pretenses, representations, and promises, knowingly transmitted and caused to be transmitted, in interstate commerce, by means of wire communications, the writings, signs, signals, pictures, and sounds set forth below:

//
//
//
//
//
//

| Count | Date | Communication |
|-------|------|---------------|
| 2 | 05/30/2001 | $1,000 wire transfer from the Campbell client trust account (Northern Trust Bank, La Jolla, California) to Wells Fargo, Acct. No. ending 4087 - Katharine Bowers |
| 3 | 06/15/2001 | Facsimile transmission of disbursement schedule from BRIXON (Arizona) to defendant CAMERON CAMPBELL |
| 4 | 06/18/2001 | $5,000 wire transfer from the Campbell client trust account (Northern Trust Bank, La Jolla, California) to Merrill Lynch - Gerard Schevers |
| 5 | 06/22/2001 | $3,000 wire transfer from the Campbell client trust account (Northern Trust Bank, La Jolla, California) to Wells Fargo, Acct. No. ending 2235 - Gordon Ortler |
| 6 | 06/28/2001 | Facsimile transmission of disbursement schedule from BRIXON (Arizona) to defendant CAMERON CAMPBELL |
| 7 | 06/29/2001 | $1,000 wire transfer from the Campbell client trust account (Northern Trust Bank, La Jolla, California) to Wells Fargo, Acct. No. ending 4087 - Katharine Bowers |
| 8 | 07/13/2001 | $5,000 wire transfer by defendant CAMERON CAMPBELL (Northern Trust Bank, La Jolla, California) to Merrill Lynch - Gerard Schevers |
| 9 | 07/30/2001 | Facsimile transmission of disbursement schedule from BRIXON (Arizona) to defendant CAMERON CAMPBELL |
| 10 | 12/03/2001 | $1,000 wire transfer from the Campbell client trust account (Northern Trust Bank, La Jolla, California) to Wells Fargo, Acct. No. ending 4087 - Katharine Bowers |
| 11 | 01/22/2002 | $71,745.55 wire transfer by First Trust Corporation dba Resources Trust Company (Wells Fargo Bank) to First National Bank, Acct. No. ending 1426 - Campbell Attorney Client Trust Account (San Diego, California) |

| Count | Date | Communication |
|---|---|---|
| 12 | 02/14/2002 | $100,000 wire transfer from Stephen McFarland (Boeing Employees Credit Union) to First National Bank, Acct. No. ending 1426 - Campbell Attorney Client Trust Account |

All in violation of Title 18, United States Code, Section 1343.

DATED: May 11, 2006.

A TRUE BILL:

*Katherine Jane Wilson*
~~Deputy~~ Foreperson

CAROL C. LAM
United States Attorney

By: *William*

WILLIAM P. COLE
Assistant U.S. Attorney

11